CORNELIUS KANOUSE, pl'ff in error, agt. JOHN M. MARTIN, def't in error.

It is irregular, to return to a writ of error *interlocutory proceedings* had in the court below with the judgment record. If interlocutory proceedings are wanted, by plaintiff in error, to be brought up for the purpose of showing jurisdiction in the court below, or for any other purpose, he should allege diminution and send a certiorari.

An assignment of errors, alleging special causes of error, founded on such interlocutory proceedings is also irregular, and must fall with the return.

Where such interlocutory proceedings are returned, at the request of the plaintiff in error, or his attorney, and error assigned thereon, they will be struck out *with costs.* The judgment record will stand as the proper return, and plaintiff in error may have liberty to assign errors anew.

*September Term,* 1846.

MOTION by defendant in error to strike out a special assignment of errors contained in a general assignment of errors in the cause, and a part of the return made to the writ of error therein.

It appeared on the part of the plaintiff in error in this cause, that the defendant in error commenced, *by declaration, an action of assumpsit in the court [\*253] of common pleas of the city and county of New York, against Kanouse, plaintiff in error. The declaration contained four counts, in each of which the plaintiff's demand was stated to be one thousand dollars, and the damages were laid at the sum of one thousand dollars; there was no bill of particulars, notice, or other writing accompanying it, limiting or reducing the plaintiff's demand to a sum less than one thousand dollars. The plaintiff below being a citizen of this state, and the defendant below a citizen of New-Jersey, the

latter, at the time of entering his appearance, duly filed a pe-tion for the removal of the cause to the circuit court of the United States for the southern district of New-York. After the presentation of the petition, the court below received an affidavit from the plaintiff, stating the amount of his claim to be four hundred and ninety-nine dollars and fifty cents only ; and thereupon refused to make an order for the removal of the cause, and subsequently permitted the plaintiff to file an amended declaration, in which his claim was reduced to four hundred and ninety-nine dollars. The defendant below, being advised that, by the presentation of the petition, the jurisdic-tion of the court below was taken away, and that all subse-quent proceedings therein were *coram non judice* and void, suffered judgment to be taken against him by default. On the first day of the session of the United States circuit court next after the presentation of the petition, the defendant below entered his appearance in the circuit court in the cause, and subsequently ruled the plaintiff to declare. Thereupon, Mar-tin, plaintiff in the court below, moved the circuit court to vacate the rule to declare, and for a perpetual stay of pro-ceedings. After argument before Mr. Justice NELSON and Judge BETTS, the judges of the circuit court, they granted the motion (without costs) solely upon the ground that there was not on file any order of the court of common pleas for the removal of the cause ; but, at the same time, expressed their opinion, that the court of common pleas erred in refusing to make such order, and had no right to proceed therein after the presentation of the petition.

On the part of the defendant in error, a copy of the writ of error was annexed to the moving papers, which was tested the 17th day of January, 1846, and returnable on the first Monday of May, 1846, and drawn in the usual form. A copy of the assignment of errors was also annexed. The special assignment of errors complained of, and which was included in the general assignment, read as follows: "There is also error in this, to wit, that by the record aforesaid it ap-[*254] pears that the judgment aforesaid, *in form aforesaid

given, was given for the said John M. Martin against the said Cornelius Kanouse, whereas, by the laws of the land, the said cause ought to have been removed to the said circuit court of the United States for the southern district of New-York, and the said court of common pleas had no jurisdiction thereof at the time of giving of the said judgment." It was shown by defendant in error that the return to the writ of error in this cause contained, in addition to the judgment record, a copy of the original declaration in the suit in the court of common pleas, the proceedings to remove the cause from the court of common pleas to the United States circuit court, and the proceedings on a motion for leave to amend the plaintiff's declaration in the court of common pleas. It was stated that the additional matters were returned by the clerk of the court of common pleas, at the special instance and request of Andrew S. Garr, Esq., the attorney for Kanouse in the common pleas, and counsel for him in the writ of error. Had not such request been made by Garr, the clerk stated that he should have only returned to the writ the judgment record, as in ordinary cases, no bill of exceptions having been filed.

An objection was made by defendant in error to allow the plaintiff in error an amendment of the assignment of errors, to bring up interlocutory proceedings to show a want of jurisdiction in the court of common pleas after the filing of the petition to remove the cause; because, the papers on this motion showed the non-residence of the attorney (A. S. Garr) of the defendant below, and a consequent inability to appear in the state court, pursuant to the act of the United States, so as to entitle him to remove the cause. The defendant in error showed by the affidavit of Peter Bently, Esq., an attorney and counselor of the supreme court of the state of New-Jersey, that Bently was well acquainted with Andrew S. Garr, Esq., who was also a practicing attorney of the supreme court of the state of New-Jersey, and had a family with whom he then resided, and for many years (then) last past had resided as a permanent resident in and inhabitant of Jersey City, in the state of New-Jersey, and as such inhabitant had been in the habit of voting

in that city and at state elections of public officers, for such officers, and that to enable said Garr to vote legally, it was necessary that he should have been an inhabitant of that state at least one year prior to giving any vote for any state or county officers, and that to enable said Garr to practice as an attorney of record in the supreme court of New-Jersey, it was also made necessary, by a rule of that court, that he should be an actual resident in the state of New-Jersey. The affidavit [*255]   *of Martin, the defendant in error, corroborated the fact of the residence of A. S. Garr in Jersey City, state of New-Jersey; and that after the issuing of the writ of error in this cause, and the filing of the return thereto, Martin made a motion in the court of common pleas, to take from the files of that court sundry of the papers filed there by Garr as attorney; copies of which were annexed to the return, on the ground, amongst others, that Garr was not an attorney of the court in which he had filed them. The motion was denied by the court of common pleas (as it was understood), chiefly on the ground that the motion was made after the proceeding had been removed into this court by writ of error. In answer to the residence of Garr, the affidavit of Andrew S. Garr stated that he had been more than thirty years, and was then a practicing attorney and counselor of this court, in which he was duly admitted, and of nearly all the other courts in the city of New-York, and had never been removed or suspended. He had for many years rented and occupied, and continued to rent and occupy a tenement in the city of New-York, and had been and was in the constant practice of spending the business hours of every day in the week in the city of New-York, and of dining there. In the year 1833, he took a house in Jersey City, in the state of New-Jersey, where his family has ever since resided; that in so doing he never intended to relinquish his professional business or residence in the city of New-York, but on the contrary to continue the same. That from the first moment of his occupying the house in Jersey City, his usual practice had been to go from thence early in the morning to his office in the city of New-York, in which

he kept his law library and papers, and to remain in the city of New-York, exercising his profession as such attorney and counselor, until a late hour in the afternoon; that during the hours of business he was rarely absent from his office, except when at the City Hall, or elsewhere in the city on business; that his name, profession, and place of business in the city of New-York were, and for many years last past had been, regularly published in the New-York city directory; that letters to him were usually directed to the city of New-York, and came to him through the post-office thereof, at which he had a box, and that he had no office or place of business out of the city of New-York. That although, during the last thirteen years, it had been generally known by the members of the bar in the city of New-York that his dwelling house was in Jersey City, his right to continue to practice as an attorney of the courts of this state had never been questioned, except by the defendant in error, and was not questioned by him in the court below, until after he had *obtained the judgment which [*256] the plaintiff in error seeks to reverse; and that during all the proceedings in that court, in the original action, it was well known, both to the plaintiff below, and to H. C. Westervelt, Esq., his attorney in the cause, that his (Garr's) dwelling house was in Jersey City, notwithstanding which they recognized and treated him as attorney for the defendant, and served on him, as attorney, the papers and notices in the cause. The following authorities were cited on this point: 5 *Ves.* 786, 789; 19 *Wend.* 11; 1 *Dodson,* 21; 1 *Phillips on Ins.* (1st edit.) 25; 2 *Kent's Com'ts,* 430, note (a) appendix to 1 *Wheaton,* 26, 27, 28.

J. M. MARTIN, *counsel in propria persona.*
H. SCOVIL, *attorney for defendant in error.*
G. R. BOWDOIN, *counsel for plaintiff in error.*
J. WALLIS, *attorney for plaintiff in error.*

BRONSON, Chief Justice. Nothing has been properly returned in answer to the writ of error, but the judgment record

in the court below.  If the plaintiff in error wanted the other matters brought up, he should have alleged diminution and sent a certiorari.  All beyond the judgment record must be struck out; and as the improper return was made upon the suggestion of the counsel for the plaintiff in error, costs of the motion should be allowed. The assignment of errors is founded upon the irregular return, and must fall with it.

*Ordered*, that the return made to the writ of error by the court below be corrected by striking out of it every thing but the judgment record, and that the assignment of errors be set aside with ten dollars costs of the motion, to be paid by the plaintiff in error, who is at liberty to assign errors anew.